MURPHY EXPLORATION &
PRODUCTION COMPANY,
Plaintiff,

v.

The UNITED STATES DEPARTMENT
OF the INTERIOR; Bruce
Babbitt, Defendants.

No. 99–CV–570.

United States District Court,
District of Columbia.

Jan. 27, 2000.

L. Poe Leggette, Fulbright & Jaworski, L.L.P., Washington, DC, for Plaintiff.

Ann D. Navaro, U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff Murphy Exploration & Production Company ("Murphy") brings suit against Defendants, the United States Department of the Interior ("Interior Department") and its Secretary, Bruce Babbitt [1], seeking a declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and 43 U.S.C. § 1349. Plaintiff asks this Court to order Defendants to refund certain royalty payments made by Plaintiff and to declare that Plaintiff does not owe royalties on certain settlement payments made to Plaintiff by purchasers of its natural gas. Defendants move to dismiss Plaintiff's Amended Complaint.

### I. Brief Factual Background [2]

Murphy is a natural gas producer whose predecessors in interest, Murphy Oil USA, Inc. ("MOUSA") and Odeco Oil & Gas Company ("Odeco"), owned interests in numerous oil and gas leases on Outer Continental Shelf ("OCS") submerged lands and

---

**1.** Bruce Babbitt is sued only in his official capacity.

**2.** For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C.Cir.1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint.

other lands during the time relevant to this suit. Interior Department regulations required MOUSA and Odeco to pay royalties to the lessor, the Interior Department, based on the "gross proceeds" received from the natural gas produced and sold from the leaseholds.

MOUSA and Odeco entered separate long-term contracts with various pipeline companies ("purchasers") that agreed to purchase natural gas from the leaseholds. Each contract included a "take-or-pay" clause that required the purchaser either to buy a certain minimum amount of gas each year or to pay for that minimum amount even if it did not take it. When the purchasers were unable to meet their "take-or-pay" obligations in the 1980s, they negotiated sixteen separate settlement agreements with MOUSA and Odeco to alter their obligations under their contracts. The settlement agreements required each purchaser to make a nonrecoupable payment to MOUSA or Odeco "to resolve past pricing disputes, accrued take-or-pay liability, and to terminate or amend the contracts through 'buyouts' or 'buydowns.'" Am.Compl. at 3. Buyouts terminate the contract, while buydowns decrease the price the purchaser will pay for gas in the future under the contract.

In January 1988, Defendants adopted regulations which specifically included take-or-pay payments within the meaning of "gross proceeds," thereby making lessees liable to lessors for royalties on such payments. 30 C.F.R. §§ 206.151 and 106.152(h). In November 1988, Defendants amended the regulation to exclude take-or-pay payments from "gross proceeds" in response to a Fifth Circuit opinion holding that only payments for gas actually produced were royalty-bearing.[3]

MOUSA never paid royalties on take-or-pay payments or on the portion of its settlement agreements allocated to settle accrued take-or-pay liability. On June 10, 1988, the Minerals Management Service of the Department of the Interior ("MMS") ordered MOUSA to pay royalties on certain take-or-pay payments MOUSA received from a purchaser. When MOUSA appealed the order the MMS Director ruled that MOUSA did not owe royalties on take-or-pay payments unless those payments were subsequently credited against make-up volumes of gas taken by the purchaser. *Murphy Oil USA, Inc.*, MMS–88–0235–OCS (1989), Pl.'s Opp'n Ex. 1.

Until Defendants amended their regulation in November 1988, Odeco did pay royalties on the portion of each settlement agreement allocated to settle accrued take-or-pay liability. On February 3, 1989, because of the November 1998 amendments to the regulations, Odeco requested a refund of $4,144,341.59 for royalties paid unnecessarily. Murphy claims that for about ten years MMS has withheld any refund due to Odeco. Murphy claims that its inability to earn interest on the withheld refund has cost it over $5 million.

On November 3, 1998, MMS issued an Order ("the November 3 Order") regarding Murphy's refund request and the amount of royalties owed. Murphy had requested that MMS issue one order resolving both its refund request and MMS's audits of Murphy's settlement agreements, which the November 3 Order did. The Order stated that Murphy owed MMS royalties of $233,504.14 for past pricing disputes; $100,634.32 for one purchaser's alleged recoupment of a portion of its 1984 settlement with Odeco; and $1,022,819.27 for buydown payments. MMS found that it owed Murphy $989,188.46 in refunds. After offsetting the refunds owed, the Or-

**3.** *Diamond Shamrock Exploration Co. v. Ho-* *del*, 853 F.2d 1159, 1165 (5th Cir.1988).

der required Murphy to pay a net total of $367,769.27. The Order also states that Murphy must pay late payment charges pursuant to the Federal Oil and Gas Royalty Management Act ("FOGRMA"), 30 U.S.C. § 1701 *et seq.*

## II. Analysis

Defendants argue that this Court lacks jurisdiction over Plaintiff's claims because the Interior Department has taken no final action reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. That statute provides that

[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.... Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

Plaintiff contends that two separate agency actions constitute final action entitling it to judicial review: the November 3 Order, and the Interior Department's alleged ten-year delay in acting on Murphy's refund request.

■ Judicial review is unavailable for non-final agency actions. *See Franklin v. Massachusetts,* 505 U.S. 788, 796, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); 5 U.S.C. § 704. Permitting agencies to finalize their actions before allowing judicial review means " 'the agency can correct any initial errors at subsequent stages of the process; moreover, the agency's position

4. This regulation was superceded in 1999, but was in effect at the time the November 3

on important issues of fact and law may not be fully crystallized or adopted in final form.' " *Independent Petroleum Association v. Babbitt,* 971 F.Supp. 19, 29 n. 6 (D.D.C.1997), quoting *Ticor Title Ins. Co. v. Federal Trade Comm'n,* 814 F.2d 731, 735 (D.C.Cir.1987).

"[A] federal court may take jurisdiction before final agency action only in a case of 'clear right,' such as 'outright violation of a clear statutory provision' or 'violation of basic rights established by a structural flaw, and not requiring in any way a consideration of interrelated aspects of the merits.' " *Independent Petroleum,* 971 F.Supp. at 29, quoting *Ticor Title Ins. Co. v. Federal Trade Comm'n,* 814 F.2d 731, 749 (D.C.Cir.1987), and *Association of Nat'l Advertisers, Inc. v. Federal Trade Comm'n,* 627 F.2d 1151, 1180 (D.C.Cir. 1979).

■ To determine whether agency action is final, courts look to factors such as "whether [the action's] impact is sufficiently direct and immediate" and whether the action is only "the ruling of a subordinate official" or is "tentative." *Franklin,* 505 U.S. at 796–96, 112 S.Ct. 2767. The "core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Id.* at 797, 112 S.Ct. 2767.

### A. The November 3 Order Is Not Final Agency Action

Defendants argue that the November 3 Order is not a final agency action because Interior Department regulations require Plaintiff to complete the administrative appeal process before the action can be considered final and ripe for judicial review. 30 C.F.R. § 243.3 (1998)[4] states that

Order was issued and governs proceedings relating to that Order.

[i]n order to exhaust administrative remedies, a decision or order of MMS' Royalty Management Program must be appealed pursuant to 30 CFR part 290 to the Director (or the Deputy Commissioner of Indian Affairs when Indian lands are involved), and subsequently to the Interior Board of Land Appeals under 30 CFR part 290.7 and 43 CFR part 4 unless the order has been made effective by the Director, or by the Assistant Secretary for Land and Minerals Management, or by the Assistant Secretary for Indian Affairs, or by the Interior Board of Land Appeals pursuant to 43 CFR part 4, as applicable.

The November 3 Order was issued by MMS' Royalty Management Program and therefore is covered by this regulation, which requires Plaintiff to appeal the Order within the agency "[i]n order to exhaust administrative remedies." 30 C.F.R. § 243.3.

Under the APA, if an agency requires that its decision be administratively appealed, that decision is not final unless it is effective pending the administrative appeal. 5 U.S.C. § 704. 30 CFR § 243.3 provides that the November 3 Order is ineffective unless one of the listed officials specifically makes it effective. Plaintiff argues that the Order is effective even though no official has made it so because Defendants are withholding the refunds they owe for royalty overpayments while Plaintiff's appeal is pending.

Plaintiff alleges that this withholding causes it irreparable harm because Defendants are not required to pay interest on withheld refunds. 43 U.S.C. § 1339 (repealed 1996).[5] Of course, had Plaintiff not requested that its refund request and the results of all Defendants' contract settlement audits be issued together, rather than issued separately as they were decided, Defendants could have issued separate orders including one to pay Plaintiff the refund it is owed. Yet even if MMS issued an order requiring payment of the refund due Plaintiff, it would have been ineffective pending appeal under 30 CFR § 243.3. Finally, Plaintiff voluntarily paid Defendants the money which it now wants refunded; this is not a case where Defendants seized Plaintiff's assets without Plaintiff's consent.

█ This Court concludes that the November 3 Order is not a final order for APA purposes for the following reasons. First, no official has formally made it effective as required by 30 CFR § 243.3. Second, even though the Order concludes that Plaintiff owes a net amount of $367,769.27, MMS has not required Plaintiff to make any payments. Third, the Order is currently on appeal to the agency. "Having not completed the administrative adjudicatory process, this court is without jurisdiction to exercise its powers of judicial review." *Shell Offshore, Inc. v. Department of the Interior,* 997 F.Supp. 23 (D.D.C.1998). Therefore, the November 3 Order is not final agency action and cannot be a basis for the exercise of jurisdiction by this Court.

### B. Plaintiff Lacks Standing to Challenge the *Antelope* and *Mobil* Decisions

Plaintiff argues that two MMS decisions, *Antelope Production Company,* MMS 96–0068–O & G, and *Mobil Exploration and Producing U.S. Inc.,* MMS–94–0668–O & G, constitute final agency action that it has

5. This statutory provision, part of the Outer Continental Shelf Lands Act ("OCSLA"), was repealed in 1996 by the Federal Oil and Gas Royalty Simplification and Fairness Act, 30 U.S.C. § 1701 *et seq.,* which provided that OCSLA would continue to govern royalty refund requests made before September 1, 1996. Plaintiff made its request in 1989.

standing to challenge. These two decisions resolved specific appeals of orders to pay royalties due on contract settlement proceeds received by the named lessees. Plaintiff describes them as final rulemakings through adjudication, asserts that the "rules" announced in these opinions were applied to it through the November 3 Order, and concludes that it therefore has standing to seek judicial review of the "rules" announced in these opinions.

*Antelope* and *Mobil* were the first two agency decisions issued after *Independent Petroleum Association v. Babbitt,* 92 F.3d 1248 (D.C.Cir.1996) (holding that MMS cannot collect royalties on nonrecouped take-or-pay settlement payments), and *In Re Century Offshore Management Corp.,* 111 F.3d 443 (6th Cir.1997) (holding that lessee owed royalty payments on take-or-pay settlement payments made to buy-down a contract), changed the royalty implications of contract settlement payments. While *Antelope* and *Mobil* did "identify the agency's path forward" on that issue, that hardly converts them into adjudicatory rulemakings. Def.'s Reply at 14. "If the contrary were true, any lessee could challenge any final agency decision on a royalty order simply by arguing that the final decision is based upon a broadly applicable premise. Such a result would contort traditional principles of standing into an unrecognizable form." Def.'s Reply at 15.

 Plaintiff was not a party to and did not have an interest in either *Antelope* or *Mobil.* Plaintiff argues that it has standing to challenge those opinions because the standards applied in them were also applied to it in the November 3 Order. The mere fact of the Order's issuance cannot confer standing on Plaintiff to challenge decisions in which it had no stake. This does not leave Plaintiff unable to challenge the agency's interpretation of the royalty implications of contract settlement payments as applied in those opinions, because Plaintiff is free to raise these issues in its administrative appeal.

### C. Delay in Resolving the Refund Request Does Not Constitute Final Agency Action

Plaintiff argues that Defendants have delayed acting on their requests for refunds of royalty overpayments for ten years, and that such delay effectively constitutes final agency action. Defendants counter that it was Plaintiff's failures to produce information and its disinterest in a speedy resolution, not foot-dragging by Defendants, which caused the long delay.[6]

 An unreasonably long delay in agency action can constitute final agency action subject to judicial review. *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984) (*"TRAC"*). While the ten-year delay in this case is indeed worrisome, it does not constitute final agency action. Initially, it should be noted that Plaintiff did not bring this action until issuance of the November 3 Order, after completion of the lengthy delay, and after Plaintiff had filed an administrative appeal of the Order.[7] Even though Defendants' resolution of the request was unduly delayed, the fact of the matter is that it has now been completed, and there is no purpose to be served by

---

**6.** Defendants finally resolved Plaintiff's 1989 refund request in the November 3 Order.

**7.** Unlike some of the seminal cases on inaction constituting delay, Plaintiff did not bring this suit to compel agency action. *See, e.g.,*

*TRAC,* 750 F.2d at 72; *Air Line Pilots Ass'n v. Civil Aeronautics Bd.,* 750 F.2d 81 (D.C.Cir. 1984); *Public Citizen Health Research Group v. Commissioner, Food & Drug Admin.,* 740 F.2d 21 (D.C.Cir.1984).

this Court's duplication of Defendants' work.

Currently the November 3 Order is the subject of a pending administrative review process. In reviewing the November 3 Order the agency can bring to bear "the benefits of agency expertise" that this Court lacks. *TRAC* at 79.

### D. Defendants Are Not Collaterally Estopped From Ordering Plaintiff To Pay Further Royalties

Plaintiff argues that the final administrative opinion in *Murphy Oil USA, Inc.* MMS–88–0235–OCS (1989) collaterally estops Defendants from demanding additional royalties from Plaintiff. In that opinion the MMS Director ruled that MOUSA did not owe royalties on take-or-pay payments unless those payments were subsequently credited against make-up volumes of gas taken by the purchaser. In *Independent Petroleum Ass'n v. Babbitt*, 92 F.3d 1248, 1260 (D.C.Cir.1996), this circuit's Court of Appeals held that "[t]ake-or-pay payments and contract settlement payments are functionally indistinguishable with respect to the calculation of royalties." Plaintiff contends that the *Murphy Oil* and *Independent Petroleum* decisions preclude Defendants from requiring Plaintiff to pay royalties on the take-or-pay settlement payments at issue.

■ Defendants respond that Plaintiff assumes the answer to the question the refund request presented: whether the take-or-pay settlement payments were recouped. *Murphy Oil* cannot prevent Defendants from investigating whether payments were recouped, or from requiring Plaintiff to pay royalties on any payments that were recouped; it can only prevent Defendants from demanding royalty payments for payments that were not recouped. Whether the payments at issue here were recouped is in dispute, and

therefore Defendants are not estopped from pursuing the remedy they seek.

### E. The Federal Oil and Gas Royalty Simplification and Fairness Act does not Impose a Deadline on Plaintiff's Refund Request

Plaintiff argues that the Federal Oil and Gas Royalty Simplification and Fairness Act ("FOGRSFA") required Defendants to issue a final decision on its refund request by May 13, 1999, and that because Defendants did not do so Plaintiff is entitled to judicial review of Defendants' final action, which, as previously discussed, is the November 3 Order. Pl.'s Opp'n at 2. FOGRSFA states:

(1) Appeals and final agency action. Demands or orders issued by the Secretary or a delegated State are subject to administrative appeal in accordance with the regulations of the Secretary ... The Secretary shall issue a final decision in any administrative proceeding, including any administrative proceedings pending on August 13, 1996, within 33 months from the date such proceeding was commenced or 33 months from August 13, 1996, whichever is later. The 33–month period may be extended by any period of time agreed upon in writing by the Secretary and the appellant.

(2) Effect of failure to issue decision. If no such decision has been issued by the Secretary within the 33–month period referred to in paragraph (1): ... (B) the Secretary shall be deemed to have issued a final decision in favor of the Secretary, which decision shall be deemed to affirm those issues for which the agency rendered a decision prior to the end of such period, as to any monetary obligation the principal amount of which is $10,000 or more, and the appellant shall have a right to judicial review

of such deemed final decision in accordance with Title 5.

30 U.S.C. § 1724(h).

Defendants interpret FOGRFSA to apply only to administrative appeals, meaning the 33–month period should be counted from the date Plaintiff filed its administrative appeal of the November 3 Order. The agency's statutory interpretation must be reviewed under the two-step rule announced in *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, this Court must determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. If Congress has directly spoken on the issue, the agency must comply with Congress's will. *Id.* at 842–43, 104 S.Ct. 2778. Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

Defendants contend that the first step of the *Chevron* analysis is satisfied because "the plain language of the statute compels the conclusion that Murphy's 1989 refund request does not fall into the narrow category of agency actions that are subject to [FOG]RSFA's 33–month deadline." Def.s' Reply at 8. Defendants argue that 30 U.S.C. § 1724(h) covers administrative proceedings that are themselves the "subject *of* an administrative appeal," meaning that only administrative appeals are subject to the 33–month deadline. *Id.* (emphasis added). In fact, the statute covers administrative proceedings that are "subject *to* administrative appeal," which appears to refer to any proceeding that could be appealed. 30 U.S.C. § 1724(h)(1) (emphasis added). Thus, Congress cannot be said to have spoken directly to the specific issue at hand, namely whether administra-

tive proceedings that are not appeals are subject to the 33–month deadline. Because this statutory provision is ambiguous, this Court proceeds to step two of the *Chevron* analysis.

The agency's interpretation of 30 U.S.C. § 1724(h)(1) is reasonable, especially in light of the statute's legislative history. That history clearly indicates that the subject matter of the statutory provision is administrative appeals. The House Report states that the provision "plac[es] a time limit on administrative appeals" and "requires the Secretary of the Interior to take a final departmental action on appealed claims within 33 months." H.R.Rep. No. 104–667 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1442. Plaintiff's argument that 30 U.S.C. § 1724(h)(1) applies to their refund request is in conflict with this legislative history and thus fails.

## F. Plaintiff Has no Cause of Action Under the Outer Continental Shelf Lands Act Citizen Suit Provision

The Outer Continental Shelf Lands Act ("OCSLA") contains a citizen suit provision that allows

any person having a valid legal interest which is or may be adversely affected [to] commence a civil action on his own behalf to compel compliance with this subchapter against any person, including the United States, and any other government instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution) for any alleged violation of any provision of this subchapter or any regulation promulgated under this subchapter, or of the terms of any permit or lease issued by the Secretary under this subchapter.

43 U.S.C. § 1349(a)(1). Plaintiff argues that this provision gives it a cause of action against Defendant. Defendants contend that Plaintiff is not qualified to bring suit

under the citizen suit provision. The Court of Appeals for this Circuit has not yet had occasion to decide whether a member of the regulated industry may bring a citizen suit under OCSLA. Consequently, in the absence of controlling Circuit authority, this Court has reviewed and found persuasive the opinions of other circuit courts holding that lessees do not have a cause of action under OCSLA.

The Fifth Circuit held in *OXY USA, Inc. v. Babbitt*, 122 F.3d 251 (5th Cir.1997), that lessees could not bring citizen suits under OCSLA. In that case, the plaintiffs were lessees whose requests for transportation allowances had been denied by the Department of the Interior ("Interior"). The Fifth Circuit ruled against the plaintiffs because Interior's denial of their request did not violate OCSLA, as required by the citizen suit provision, and because the lessees were "attempting to use the citizen suit provision as an avenue of obtaining judicial review of OCSLA-related agency decisions that is wholly independent of the judicial review procedures set forth in the APA." *Id.* at 258. The Fifth Circuit concluded that

> [w]e do not think that Congress intended for the citizen suit provision to operate either as a means of obtaining "umbrella" review for a series of agency decisions that were or will be otherwise subject to judicial review under the APA, or as an express avenue for appealing to the district court an initial agency decision that is subject to further review within the agency. To hold otherwise would be to interpret the citizen suit provision as implicitly repealing the APA with respect to agency action.

The Tenth Circuit adopted the reasoning of *OXY* in *Amerada Hess Corp. v. Department of the Interior*, 170 F.3d 1032 (10th Cir.1999), noting that "[a]ny other interpretation of the citizen suit provision would implicitly repeal the APA with respect to such agency decisions—contrary to the well-established canon of statutory construction against repeals by implication." *Id.* at 1034. *See also Shell Offshore. Inc. v. Department of the Interior*, 997 F.Supp. 23, 35 (D.D.C.1998) (adopting the reasoning of *OXY*).

In an analogous situation, the Supreme Court reached the same conclusion regarding the citizen suit provision of the Endangered Species Act of 1973, 16 U.S.C. § 1540(g), in *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The Supreme Court ruled that the citizen suit provision "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties—both private entities and Government agencies—but is not an alternative avenue for judicial review of the Secretary's implementation of the statute." *Id.* at 173, 117 S.Ct. 1154.

In *Bennett* the Supreme Court found that the purpose of the ESA's citizen suit provision was to supplement the Government's enforcement efforts. *Id.* at 165, 117 S.Ct. 1154. It found evidence for this conclusion in the citizen suit provision's "elimination of the usual amount-in-controversy and diversity of citizenship requirements, its provision for recovery of the costs of litigation (including even expert witness fees), and its reservation to the Government of a right of first refusal to pursue the action initially and a right to intervene later." *Id.* OCSLA's citizen suit provision is similar. It provides for the recovery of all costs of litigation, 43 U.S.C. § 1349(a)(5); for a Government right of first refusal, 43 U.S.C. § 1349(a)(2)(A) and (B); and for a Government right of intervention, 43 U.S.C. § 1349(a)(4). OCSLA's citizen suit provision also provides for jurisdiction even where the amount-in-controversy requirement is not met, though not

**10**

as explicitly as the Endangered Species Act does.[8]

As in *Bennett,* the purpose of OCS-LA's citizen suit provision is to aid in the enforcement of the statute. Permitting lessees to challenge agency efforts at enforcement under that provision would undermine its purpose. This Court therefore agrees with the Fifth and Tenth Circuits that the OCSLA citizen suit provision cannot serve as the basis for jurisdiction for plaintiffs who cannot bring suit under the APA.

In addition, Plaintiff has not shown that Defendants have violated OCSLA, a prerequisite for bringing claims under the citizen suit provision. Plaintiff claims that Defendants' failure to refund Plaintiff's royalty overpayments violates OCSLA, but as discussed above this Court disagrees. Therefore, Plaintiff has no cause of action under OCSLA.

### III. Conclusion

The November 3 Order itself is not final agency action subject to judicial review. Defendants have now completed their unduly lengthy decision-making process, and are now conducting an administrative review which is not collaterally estopped by previous MMS opinions. This Court will therefore await the agency's administrative review of the November 3 Order. Defendants' Motion to Dismiss is *granted.* An Order will issue with this Opinion.

### ORDER

This matter comes before the Court upon Defendants' Motion to Dismiss [# 15]. Upon consideration of Defendants' Motion, Plaintiff's Opposition, Defendants'

Reply, and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is this 26th day of January 2000 hereby

**ORDERED** that Defendants' Motion to Dismiss is **granted.**

---

8. The Endangered Species Act provides that "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties." 16 U.S.C. § 1540(g). OCSLA provides that "the district courts of the United States *shall* have jurisdiction of cases and controversies arising out of, or in connection with" activities governed by OCSLA. 43 U.S.C. § 1349(b)(1) (emphasis added).