**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 25 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

---

AMERADA HESS CORPORATION,

     Plaintiff - Appellant,

v.

DEPARTMENT OF INTERIOR,

     Defendant - Appellee.

No. 97-5223

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 94-CV-1051-H)**

---

Jerry E. Rothrock of Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, D.C. (Patrick D. O'Connor of Moyers, Martin, Santee, Imel & Tetrick, Tulsa Oklahoma and David M. Castro, Amerada Hess Corporation, Houston, Texas with him on the briefs) for the Plaintiff - Appellant.

Robert L. Klarquist, Department of Justice, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General, Stephen Lewis, United States Attorney, and Phil Pinnell, Assistant United States Attorney, Tulsa, Oklahoma; David C. Shilton, Department of Justice, Washington, D.C.; and Geoffrey Heath, Office of the Solicitor, Department of Interior, Washington, D.C., with him on the briefs) for the Defendant - Appellee.

---

Before **TACHA**, **McWILLIAMS** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

In this case, we are asked primarily to determine whether reimbursements for certain production-related costs, received by a federal gas lessee from its gas purchasers under an administrative order of the Federal Energy Regulatory Commission ("FERC"), are properly subjected to federal royalties by the Secretary of the Interior ("Secretary") under the authority of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356.  We are also required to resolve whether the Secretary's claims may be offset by the lessee's own claims for reimbursement from the Secretary.  Finally, we must determine whether either set of claims is barred under the applicable statute of limitations.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's holding that the Department of the Interior ("DOI") is entitled to royalties on cost reimbursements received by Amerada Hess Corporation ("AHC").  Finding lack of jurisdiction, we vacate the district court's rulings on AHC's claims for offsetting royalty overpayments against the royalties owed DOI.

**I**

The case grows out of two separate administrative proceedings before DOI. The first, finalized in an agency decision of December 13, 1993, determined that AHC, a lessee of continental shelf oil and gas deposits owned by the United States, was time-barred from claiming reimbursement from the Secretary for a royalty over-payment of $683,333.  Under OCSLA, which authorizes the

Secretary to lease continental shelf oil and gas reserves, 43 U.S.C. § 1337, the Secretary is entitled to royalties on the "amount or value of the production saved, removed, or sold" by a lessee, id. at § 1337(a)(1)(A). If the Secretary determines that a lessee has paid excessive royalties, the lessee is entitled to reimbursement without interest "if a request for repayment of such excess is filed with the Secretary within two years after the making of the payment." Id. at § 1339(a). In this case, AHC applied for reimbursement nearly six years after the alleged over-payment was made. The Secretary denied the request, citing the two year statute of limitations.

A second administrative determination, dated December 1, 1995, requires AHC to pay DOI $1,022,669.52 in additional royalties on some sixteen offshore leases. The DOI based this determination on a series of administrative orders that FERC issued under the price-setting authority of the Natural Gas Policy Act of 1978, 15 U.S.C. § 3320(a)(2).[1] FERC regulations stipulate that sale prices may

_____

[1] Section 3320(a)(2) has since been repealed. See Pub. L. 101-60, § 2(b) 103 Stat. 158 (July 26, 1989). At all times relevant to this appeal, however, it provided that:

> a price for the first sale of natural gas shall not be considered to exceed the maximum lawful price . . . if such sale price exceeds the maximum lawful price to the extent necessary to recover . . . any costs of compressing, gathering, processing, treating, liquefying, or transporting such natural gas, or other similar costs, borne by the seller and allowed for, by rule or order, by [FERC].

15 U.S.C. § 3320(a)(2).

always include "production-related" costs, defined as "costs, other than production costs, that are incurred . . . to deliver, compress, treat, liquefy, or condition natural gas." 18 C.F.R. §§ 271.1104(a) & 271.1104(c)(7)(i). To implement these regulations, FERC issued a number of administrative orders establishing generic cost allowances for gathering and compression costs. See Order 94-A, 48 Fed. Reg. 5152, 5180 (Feb. 3, 1983). The Fifth Circuit upheld these orders, see Texas Eastern Transmission Corp. v. FERC, 769 F.2d 1053 (5th Cir. 1985), thereby allowing numerous gas producers, including AHC, to receive large lump-sum reimbursements from their purchasers. It is these so-called "Order 94 reimbursements" that DOI found royalty-bearing under OCSLA, 43 U.S.C. § 1337(a)(1)(A).

AHC claims this latter determination is arbitrary and capricious, unsupported by substantial evidence, and in excess of statutory authority. The company also insists 28 U.S.C. § 2415(a) bars DOI's claim for royalty payments on the Order 94 reimbursements.[2] Finally, AHC contends that it is entitled to offset its obligations to DOI against royalty over-payments on other leases ("cross-lease netting"). In its December 1, 1995, decision, DOI rejected all these

_____

[2] "Every action for money damages brought by the United States . . . which is founded upon any contract . . . shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . ." 28 U.S.C. § 2415(a).

claims.  The district court affirmed DOI and granted summary judgment against AHC on all its claims, and the company appeals.

## II

### A

AHC's amended complaint, filed in the district court, asserts jurisdiction under OCSLA's citizen suit provisions, see 43 U.S.C. § 1349(a), as well as under the Administrative Procedure Act ("APA"), see 5 U.S.C. § 704.  Section 1349(a)(1) states that:

> any person having a valid legal interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this subchapter against any person, including the United States, and any other government instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution) for any alleged violation of any provision of this subchapter or any regulation promulgated under this subchapter, or of the terms of any permit or lease issued by the Secretary under this subchapter.

43 U.S.C. § 1349(a)(1).[3]  The government counters, first, that this citizen suit provision cannot support an action challenging a decision of the Secretary rendered in fulfillment of his duties under the Act, and second, that even were jurisdiction to lie under 43 U.S.C. § 1349(a), judicial review should nonetheless proceed in accordance with APA standards and procedures.

---

[3] OCSLA defines "person" to include "a private, public, or municipal corporation." 43 U.S.C. § 1331(d).

We agree with the government's contention that this suit cannot be brought under 43 U.S.C. § 1349(a)(1).  In closely analogous circumstances, the Fifth Circuit has refused to exercise jurisdiction under this provision.  See OXY USA, Inc., v. Babbitt, 122 F.3d 251, 258 (5th Cir. 1997).  OXY holds that the citizen suit provision is not available to challenge agency decisions that "were or will be otherwise subject to judicial review under the APA."  Id.  Any other interpretation of the citizen suit provision would implicitly repeal the APA with respect to such agency decisions—contrary to the well-established canon of statutory construction against repeals by implication.  See id. (citing Watt v. Alaska, 451 U.S. 259, 267 (1981); 1A Norman J. Singer, Sutherland on Statutes and Statutory Construction § 23.09, at 338 (5th ed. 1993)).  In addition, the Supreme Court has recently refused to construe the Endangered Species Act's citizen suit provision, 16 U.S.C. § 1540(g)(1)(A), as an "alternative avenue for judicial review of the Secretary's implementation of the statute" because such an interpretation "would effect a wholesale abrogation of the APA's 'final agency action' requirement."  Bennett v. Spear, 117 S. Ct. 1154, 1166-67 (1997).[4]  Although there is no dispute that "final agency action" has occurred in this case, appellant's construal of 43 U.S.C.

---

[4] Like 43 U.S.C. § 1349(a)(1), the Endangered Species Act's citizen suit provision allows for the commencement of a civil suit to enjoin any person, "including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A).

§ 1349(a)(1) would abrogate the APA in precisely such fashion. Like the Supreme Court and the Fifth Circuit, we refuse to adopt such an implausible interpretation. Consequently, we conform our review to APA standards and the available administrative record.

**B**

Furthermore, we are without jurisdiction to consider appellant's claims that the Secretary has erroneously refused to repay or refund AHC's various royalty overpayments. Under the Tucker Act, 28 U.S.C. § 1491, an action against the United States, for monetary relief in excess of $10,000, and founded upon the Constitution, federal statute, executive regulation, or government contract, must be brought in the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1). AHC's claims for repayments proceed from at least one of these enumerated sources of law, and are intended to obtain more than the minimum amount of monetary relief required for Court of Claims jurisdiction under the Tucker Act. Exclusive jurisdiction over these claims thus lies in the Court of Claims. See Diamond Shamrock Exploration Co. v. Hodel, 853 F.2d 1159, 1168 (5th Cir. 1988) (finding exclusive jurisdiction of Court of Claims to hear refund request from oil and gas producer-lessee that had paid royalties to DOI under OCSLA); see also National Ass'n. of Counties v. Baker, 842 F.2d 369, 376 & n. 5 (D.C. Cir. 1988) (characterizing 43 U.S.C. § 1339(a) as "compensation mandating" and therefore

within the exclusive jurisdiction of the Court of Claims when other provisions of the Tucker Act have been met).

Both parties argue that the Court of Claims does not have exclusive jurisdiction over AHC's refund claims because AHC seeks declaratory judgments concerning its rights to refunds under OCLSA. Accordingly, the parties contend the district court had jurisdiction to hear all of AHC's claims under the APA, which provides concurrent jurisdiction to "court[s] of the United States" where an action seeks "relief other than money damages." 5 U.S.C. § 702. This argument, which asks us to place the form of a complaint over the substance of its claims, is unavailing.[5] "[I]f the plaintiff's 'prime objective' or 'essential purpose' is to recover money (in an amount in excess of $10,000) from the federal government, then the Court of Federal Claims' exclusive jurisdiction is triggered." Burkins v.

---

[5] It is irrelevant that AHC presents its prayer for relief in equitable language, because § 702 distinguishes between "specific relief and substitute relief, not between equitable and nonequitable categories of remedies." Department of Army v. Blue Fox, Inc., 119 S. Ct. 687, 691 (1999). In distinguishing between these two types of remedies, the Court has explained that "[d]amages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he is entitled.'" Bowen v. Massachusetts, 487 U.S. 879, 895 (1988) (quoting Maryland Dep't. of Human Resources v. Dep't. of Health and Human Services, 763 F.2d 1441, 1446 (D.C. Cir. 1985)). AHC's claims might appear to be for specific relief, insofar as AHC requests a monetary award representing royalty overpayments that the government has refused to refund. Traditionally, however, "a suit seeking to recover a past due sum of money that does no more than compensate a plaintiff's loss is a suit for damages, not specific relief." Bowen, 487 U.S. at 918 (Scalia, J., dissenting).

United States, 112 F.3d 444, 449 (10th Cir. 1997) (citations omitted); see also

Amoco Production Co. v. Hodel, 815 F.2d 352, 361 (5th Cir. 1987) (citation

omitted) (declining to exercise jurisdiction over OCSLA claim, and stating that

"in the 'murky' area of Tucker Act jurisprudence, one of the few established

principles is that the substance of the pleadings must prevail over their form").

Therefore, this court does not—and the district court did not—have jurisdiction

over AHC's claims arising from DOI's refusal to refund AHC's excess royalty

payments.[6]

### III

As to appellant's claim that 28 U.S.C. § 2415(a) bars DOI's claim for

additional royalties, the government asserts that this provision does not apply to a

claim for unpaid royalties owed the government under the terms of a lease.  We

do not decide the merits of this assertion, however, because, even were we to

assume that § 2415(a) did apply, it would not bar the claims made by the

Secretary.

Section 2415(a) allows the government to bring an "action for money

damages" so long as "the complaint is filed within six years after the right of

---

[6]AHC raises 28 U.S.C. § 2406 to support the merits of its claim for offsets. Implicit in AHC's reliance on this statute is an argument that the government has waived sovereign immunity for AHC's claims for credits.  Section 2406, however, waives sovereign immunity for such claims only in "an action by the United States," and not, as here, where the person seeking credit against the government files suit in district court.

action accrues or within one year after final decisions have been rendered in applicable administrative proceedings." 28 U.S.C. § 2415(a). On July 1, 1986, DOI first ordered AHC to pay royalties on its Order 94 reimbursements. This order was issued within six years of the July 25, 1980, start date of AHC's production of natural gas from oil and gas leases covering submerged lands under OCSLA. According to AHC, royalties on gas sold were due no later than the end of the month following production. Consequently, DOI made its demands for royalty payment on the Order 94 reimbursements within six years of the earliest possible date of accrual.

Appellant counters that DOI did not file a counterclaim in district court until January 6, 1995, well beyond the applicable six-year period. This assumes that the July 1, 1986, order is not itself a "complaint" in "an action for money damages" within the meaning of § 2415(a). If that assumption is correct, however, then § 2415(a) cannot apply in this case at all because, under the plain terms of appellant's reading of the statute, § 2415(a) only applies to bar actions based on the filing of a formal complaint. Section 2415(a), therefore, simply will not apply to the July 1, 1986, order. Yet that order is the entire basis for the government's action in this case; all that has happened since DOI issued the order are AHC's administrative and judicial appeals of that decision.

It is the district court's refusal to find the order violative of the APA, rather than its adjudication of the merits of any complaint for money damages filed by the government, that leaves appellant owing the ordered royalties to the government. If the order is not tantamount to a complaint for money damages, then the government did not need to file a complaint until the final administrative action to establish appellant's obligation. Here, the government filed its counterclaim before the final agency action on December 1, 1995. Consequently, operation of the limitations period in § 2415(a) cannot undermine the determination that appellant owes unpaid royalties on the Order 94 reimbursements.

**IV**

Finally, we address appellant's substantive complaint that the Secretary's demand for royalties on Order 94 reimbursements is arbitrary and capricious, not supported by substantial evidence, and is otherwise not in accordance with law. As a preliminary matter, we adopt the Fifth Circuit's holding, based on DOI's longstanding interpretation of its own regulations, that Order 94 reimbursements are royalty bearing. See Mesa Operating Limited Partnership v. U.S. Dep't of the Interior, 931 F.2d 318, 323-26 (5th Cir. 1991).

In response to the Secretary's order for royalties, AHC originally argued that its Order 94 reimbursements were for post-production delivery services that

were appropriately excluded from the royalty base under the agency's own regulations. DOI's Board of Land Appeals ("IBLA") rejected this claim in a ruling issued August 3, 1993. See Appellant's App. at 553. In that same decision, however, IBLA remanded for a determination of whether AHC could substantiate its claim that certain Order 94 reimbursements were for transportation purposes and hence not royalty-bearing. See id. at 555. The December 1, 1995, decision by the Secretary, which serves as the final agency action in this case, determined that the company had failed to prove that any of the Order 94 reimbursements were exempt from royalties on this basis. See Appellant's App. at 994, 998-1012.

AHC offers three arguments against the agency's conclusion. First, AHC argues that the agency depends on a reading of the "marketable condition" rule that DOI itself rejected in Xeno, Inc., 134 IBLA 172 (1995). During the period in dispute, the marketable condition rule required lessees to "put into marketable condition, if commercially feasible, all products produced from the leased land. In calculating the royalty payment, the lessee may not deduct the costs of treatment." 30 C.F.R. § 250.42.[7] A related regulation promulgated during this period, the "gross proceeds rule," provided that "[u]nder no circumstances shall

---

[7]The marketable condition rule has remained in effect after 1988 in 30 C.F.R. §§ 206.152(i) and 206.153(i).

the value of production be less than the gross proceeds accruing to the lessee." 30 C.F.R. § 206.150.[8] In Xeno, DOI found that the producer company's gas was marketable directly at the wellhead. Therefore, all subsequent gathering costs were post-production and non-royalty-bearing, and were not part of the value of production and fell outside the terms of the marketable condition and gross proceeds rules. See Xeno, 134 IBLA at 183-84. AHC argues that its Order 94 reimbursements, like those received by Xeno, are not subject to royalty payments. We agree with the district court, however, that Xeno reached a different result because the producer company in that case showed that its gas was in marketable condition and could be sold directly from the wellhead. AHC has made no such showing here, and therefore cannot benefit from DOI's ruling in Xeno.

Second, AHC argues that it is entitled to offsets for the cost of transporting the gas from the wellheads. AHC never proved that its Order 94 reimbursements were for transportation. It simply argued that all of its gas movement costs were transportation costs rather than gathering costs covered by the marketable condition or gross proceeds rules. Because AHC did not meet its burden at the administrative level, we cannot say that DOI's ruling was arbitrary or capricious.

_____

[8]The gross proceeds requirement has remained in effect after 1988 as 30 C.F.R. §§ 206.152(h) and 206.153(h).

Third, AHC claims that a similarly situated lessee, Marathon, has been granted a transportation allowance for its Order 94 reimbursements that exempt it from paying royalties for the same services that AHC performed and for which AHC was denied allowance. AHC's comparison to DOI's compromise and settlement with Marathon is not relevant here because Marathon was allowed its transportation deductions pursuant to a settlement rather than to DOI's interpretation of its regulations. Accordingly, we hold that DOI properly determined that AHC is obligated to pay royalties on the Order 94 reimbursements under its well-established regulations.

## V

Because the district court did not have jurisdiction to hear AHC's claims for excess royalty payment, we VACATE that part of its judgment; in all other matters, we AFFIRM the district court.