230 F.3d 1178 (10th Cir. 2000)
 OXY USA, INC., Plaintiff-Appellee,
MOBIL EXPLORATION & PRODUCING U.S., INC., Plaintiff,
v.
BRUCE BABBITT, Secretary; BOB ARMSTRONG, Assistant Secretary, Land and Minerals Management; CYNTHIA QUARTERMAN, Director, Minerals Management Service; ERASMO GONZALES, Chief, Houston Compliance Division, Minerals Management Service; and GARY L. JOHNSON, Chief, Dallas and Tulsa Compliance Offices, Minerals Management Service, Department of the Interior, Defendants-Appellants.
SHELL OIL COMPANY, Plaintiff-Appellee,
v.
BRUCE BABBITT, Secretary, Department of the Interior; BOB ARMSTRONG, Assistant Secretary, Land and Minerals Management, Department of the Interior; CYNTHIA QUARTERMAN, Director, Minerals Management Service, Department of the Interior; ERASMO GONZALES, Chief, Houston Compliance
Division, Minerals Management Service, Department of the Interior; and GARY L. JOHNSON, Chief, Dallas and Tulsa Compliance Offices, Minerals Management Service, Department of the Interior, Defendants - Appellants.
 Nos. 98-5222, 98-5252 and 99-5098
 UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
 October 23, 2000
 
 APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA. (D.C. Nos. 96-CV-1067-K and 96-CV-1078-K) Sean H. Donahue, Attorney, Department of Justice, Environment & Natural Resources Division, Washington, D.C. (Peter Coppelman, Acting Assistant Attorney General; William B. Lazarus, Donna S. Fitzgerald, and Robert L. Klarquist, Attorneys, Department of Justice, Environment & Natural Resources Division, Washington, D.C., on the briefs in No. 98-5222; Lois J. Schiffer, Assistant Attorney General; William B. Lazarus, Donna S. Fitzgerald, and Robert L. Klarquist, Attorneys, Department of Justice, Environment & Natural Resources Division, Washington, D.C., on the briefs in No. 98-5252 and 99-5098), for Defendants-Appellants.
 Patricia Dunmire Bragg of Gardere & Wynne, L.L.P., Tulsa, Oklahoma (Stephen R. Ward of Gardere & Wynne, L.L.P., Tulsa, Oklahoma; Oliver S. Howard, Teresa B. Adwan, and Dennis C. Cameron of Gable & Gotwals, P.C., Tulsa, Oklahoma, with her on the brief in No. 98-5222), for Plaintiff-Appellee Oxy USA, Inc.
 L. Poe Leggette of Fulbright & Jaworski L.L.P., Washington, D.C. (Nancy L. Pell of Fulbright & Jaworski L.L.P., Washington, D.C.; David L. Bryant, Tulsa, Oklahoma; and Michael E. Coney, Of Counsel, Shell Oil Company, New Orleans, Louisiana, with him on the brief in Nos. 98-5252 and 99-5098), for Plaintiff-Appellee Shell Oil Company.
 Before BRISCOE and McKAY, Circuit Judges, and BROWN,* Senior District Judge.
 BRISCOE, Circuit Judge.
 
 
 1
 Through the Department of the Interior ("DOI"), Shell Oil Company ("Shell") and OXY USA, Inc. ("OXY") obtained a number of oil and gas leases in California. In late 1996, the Minerals Management Service ("MMS"), a bureau of the DOI, issued orders requiring Shell and OXY to pay additional royalties and interest on oil produced between 1980 and 1988. Shell and OXY challenged the orders in federal district court. Among other things, Shell and OXY asserted that the orders were barred by the six-year statute of limitation set forth in 28 U.S.C. 2415(a). The district court agreed, and entered summary judgment against the government. We exercise jurisdiction under 28 U.S.C. 1291, reverse the district court's order, and remand with directions.
 
 I. BACKGROUND
 
 2
 This dispute focuses on the DOI's administration of mineral leases. The DOI issues leases authorizing private parties to search for and produce oil and gas on public lands, see 30 U.S.C. 226, lands acquired by the federal government, see 30 U.S.C. 352, and the submerged lands of the Outer Continental Shelf. See 43 U.S.C. 1337. The DOI requires each lease recipient to pay a "royalty" a percentage of the "amount or value of the production" removed or sold from the lease. 30 U.S.C. 226(b)(1)(A); 43 U.S.C. 1337(a)(1)(A), (b)(3). The DOI has the power to take either a royalty share of the production itself or the cash value of the production. See 30 U.S.C. 192; 43 U.S.C. 1353(a). The MMS is responsible for determining the value of production.[1] The usual practice is for each lessee to track and report its own production and to calculate the appropriate royalty payment, subject to a compliance audit by the MMS. See 30 C.F.R. 217.50, 218.50.
 
 
 3
 The Federal Oil and Gas Royalty Management Act ("FOGRMA") directly pertains to the collection of royalties from mineral leases. The FOGRMA directs the Secretary of the Interior ("Secretary") to "establish a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." 30 U.S.C. 1711(a). In particular, the statute instructs the Secretary to "audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted." 30 U.S.C. 1711(c)(1). The FOGRMA requires each lessee to maintain records relevant to royalty computations "for 6 years after the records are generated unless the Secretary notifies the record holder that he has initiated an audit or investigation involving such records and that such records must be maintained for a longer period." 30 U.S.C. 1713(b).[2]
 
 
 4
 Through the 1980s, Shell and OXY paid royalties on production in California under their oil and gas leases. With respect to Shell's payments, the MMS determined that the posted prices established by Shell were the proper royalty value for 97 percent of the oil. In 1991 and 1993, MMS officials audited and approved Shell's royalty payments. Similarly, the MMS audited the royalties paid by OXY on its California production several times in the 1980s and early 1990s.
 
 
 5
 In 1996, however, the MMS altered the way it calculated the two companies' royalty payments. Using a new method of computation (which is based on the price of crude oil from the Alaskan North Slope rather than the posted prices originally used by Shell and OXY),[3] the MMS determined that Shell and OXY owed additional royalties. By orders dated October 18, 1996 and December 20, 1996, the MMS instructed Shell to pay more than $50 million in royalties, plus estimated interest of over $126 million, on production between January 1980 and February 1988. After acknowledging a computational error, the MMS lowered its demand to approximately $28 million in royalties plus an estimated $70 million in interest. In another order dated October 18, 1996, the MMS instructed OXY to pay approximately $354,000 in additional royalties and $562,000 in interest. The MMS subsequently withdrew this order and, in a separate order dated December 20, 1996, instructed OXY to pay over $551,000 in royalties, and an estimated $1.7 million in interest, on production from January 1980 through September 1983.
 
 
 6
 Shell and OXY filed complaints seeking declaratory relief in federal district court. Among other things, Shell and OXY alleged that the "orders to pay" issued by MMS were barred by the statute of limitation set forth in 28 U.S.C. 2415(a). Section 2415(a) provides in relevant part:
 
 
 7
 Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . .
 
 
 8
 The government did not assert any tolling defenses under 28 U.S.C. 2416(c).[4] Nor did the government assert that its claims had not accrued when the companies' royalty payments originally became due between January 1980 and February 1988. Instead, the government contended that 2415(a) was inapplicable to orders directing oil and gas lessees to pay royalties. After considering the parties' cross-motions for summary judgment, the district court concluded that Phillips Petroleum Co. v. Lujan, 4 F.3d 858, 860 & n.1 (10th Cir. 1993) ("Phillips III") established as binding precedent that 2415(a) applies to government actions to collect royalty payments. On that basis, the district court rejected the government's argument and entered judgment as a matter of law in favor of Shell and OXY.
 
 II. DISCUSSION
 
 9
 We review a grant of summary judgment de novo. See United States v. Hess, 194 F.3d 1164, 1170 (10th Cir. 1999). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We likewise review de novo "questions of law turning on the interpretation and application of a federal statute." Burlington Northern R.R. Co. v. Huddleston, 94 F.3d 1413, 1416 (10th Cir. 1996).
 
 
 10
 The government's position on appeal is twofold.[5] First, the government challenges the district court's conclusion that Phillips III held as a matter of law that 2415(a) applies to agency orders seeking royalty payments. Second, the government contends that the MMS orders directing Shell and OXY to pay additional royalties are not subject to the six-year limitation period because those orders do not constitute "actions," do not seek "money damages," and are not "founded upon contract" within the meaning of 2415(a). The government also argues that 2415(a) is inapplicable because Congress "otherwise provided" a comprehensive scheme for the collection of royalties by enacting the FOGRMA. Shell and OXY dispute each of these assertions. OXY further maintains that even if 2415(a) is inapplicable, the FOGRMA independently requires the government to collect royalties in a timely manner.
 
 A. The Phillips III Decision
 
 11
 A brief summary of the Phillips III decision is in order. Phillips Petroleum Company ("Phillips") breached its lease contract by unintentionally underpaying oil and gas royalties. After conducting an audit, the government discovered the breach and issued an order to pay. Phillips filed suit in federal district court, arguing that the government's order was issued more than six years after the breach and thus was untimely under 2415(a). The district court granted summary judgment to Phillips. On appeal, the government argued that (1) "a cause of action for unpaid royalties" under 2415(a) "does not accrue until an audit is completed;" and (2) "the statute of limitations is tolled" pursuant to 2416(c) "until such time as the government timely completes an audit." 4 F.3d at 860. We rejected the government's first argument, holding that its right of action "accrued on the date the contract was breached, which was the date the royalties were due and payable." Id. at 861. However, we went on to conclude that the statute of limitation should have been tolled "until such time as the government could reasonably have known about Phillips' breach." Id. at 862. We then remanded the case to the district court to resolve issues of fact: whether "the 'facts material to the government's right of action [were] not known and reasonably could not be known' without the audit," and whether the government's audit of Phillips "was completed within a reasonable time after the deficient royalty payment." Id. at 863.
 
 
 12
 The disputed language in Phillips III appears at the beginning of the opinion. Before addressing the government's argument that no cause of action accrues until an audit is completed, we stated that "[t]he parties agree that 28 U.S.C. 2415(a) is the applicable statute for determining when the government must commence its action to collect the royalty underpayment." Id. at 860. After quoting the text of the statute, we offered the following commentary in a footnote:
 
 
 13
 Both parties recognize, and we agree, that oil and gas leases are contracts. Thus, we likewise agree with the parties that 28 U.S.C. 2415(a) is the controlling statute of limitations as it applies to "every action for money damages brought by the United States . . . which is founded upon any contract."
 
 
 14
 Id. at 860 n.1 (emphasis in original, citations omitted). Whether these statements in Phillips III constitute a "holding" is the threshold issue in this appeal,[6] for "a panel of this Court is bound by a holding of a prior panel" but "is not bound by a prior panel's dicta." Bates v. Department of Corrections of the State of Kansas, 81 F.3d 1008, 1011 (10th Cir. 1996).
 
 
 15
 Decisions from this circuit and others provide working definitions of "dicta." As we explained in Rohrbaugh v. Celotex Corp., 53 F.3d 1181 (10th Cir. 1995), dicta are "statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." Id. at 1184 (quoting Black's Law Dictionary 454 (6th ed. 1990)). Put another way, dictum is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding that, being peripheral, may not have received the full and careful consideration of the court that uttered it." United States v. Crawley, 837 F.2d 291, 292 (7th Cir. 1988) (citation omitted); accord In re Cajun Elec. Power Coop., Inc., 109 F.3d 248, 256 (5th Cir. 1997). Using either of these definitions, it is "well established" that "[b]road language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority." Smith v. Orr, 855 F.2d 1544, 1550 (Fed. Cir. 1988) (citing Kastigar v. United States, 406 U.S. 441, 454-55 (1972)).
 
 
 16
 Our remarks in Phillips III regarding the applicability of 2415(a) plainly qualify as dicta, because they were neither "necessary" nor "essential" to the determination of that case. We determined in Phillips III when the government's claim for unpaid royalties accrued, and the significance of "the date at which the government should 'reasonably' have known" of Phillips' breach. 4 F.3d at 863. Whether the six-year statute of limitation governed the government's claim was not essential to our holding, because we could have assumed arguendo that 2415(a) applied and still found in the government's favor based on the tolling provision in 2416(c). In other words, even if 2415(a) applied, it would not have barred the claim for unpaid royalties against Phillips so long as the government conducted its audit in a reasonable manner. Similarly, it is abundantly clear that footnote 1 could be deleted from the Phillips III opinion without "seriously impairing the analytical foundations of the holding." Indeed, deleting footnote 1 would leave the holding in Phillips III entirely intact: (1) the parties to the case implicitly agreed that the term "action" covered the government orders at issue; (2) the parties to the case agreed that 2415(a) was "the applicable statute for determining when the government [could] commence its action to collect the royalty underpayment," id. at 860; (3) "the government's right of action accrued on the date the contract was breached," id. at 861; and (4) the statute of limitation should have been tolled "until such time as the government could reasonably have known" about the breach. Id. at 862; cf. Mobil Exploration & Producing U.S., Inc. v. Department of Interior, 180 F.3d 1192, 1201-02 (10th Cir. 1999) (classifying as "dictum" language in Phillips III that was not "directly related" to the facts or holding of the case).
 
 
 17
 That our comments in Phillips III regarding 2415(a) were not necessary to the outcome of the case is confirmed by our decision in Amerada Hess Corp. v. Department of Interior, 170 F.3d 1032 (10th Cir. 1999). As in this case, the government in Amerada Hess asserted that the limitation period set forth in 2415(a) was inapplicable to a claim for unpaid oil and gas royalties. We declined to decide the merits of the government's argument, noting that "even were we to assume that 2415(a) did apply, it would not bar the claims made by the Secretary." Id. at 1036. This statement is significant for two reasons. First, it demonstrates that a finding regarding the applicability of 2415(a) is not "necessary" or "essential" when a dispute over timeliness can be resolved on other grounds. The Amerada Hess court assumed that 2415(a) governed but found in the government's favor based on the statutory meaning of "complaint" and "action for money damages." Id. Second, our statement in Amerada Hess implicitly shows that footnote 1 in Phillips III does not constitute binding precedent. If Phillips III had established in this circuit that 2415(a) governs claims for unpaid royalties, we quickly could have rejected the government's argument in Amerada Hess. Instead, we chose to "assume" the statute applied, and then engaged in an extensive analysis of whether the government actually filed a "complaint" seeking "money damages" within a six-year period. Id. at 1033-34, 1036. The fact that we performed such an analysis rather than rejecting the government's argument out of hand strongly suggests that we did not consider footnote 1 in Phillips III to be controlling authority.
 
 
 18
 In addition, at least two other factors demonstrate that our statements in Phillips III concerning the applicability of 2415(a) do not constitute binding precedent. While neither of these factors standing alone would necessarily show that the statements in question are dicta, in combination with the foregoing they conclusively establish that our remarks in Phillips III do not control the outcome of the instant case. First, it is undisputed that the government did not contest the applicability of 2415(a) in Phillips III. See Shell Answer Brief at 17 (acknowledging that "the government's briefs in Phillips III did not dispute that section 2415 applied to the MMS's order"). As a result, the briefs submitted to the Phillips III panel were silent on the topic of whether orders seeking unpaid royalties should be subject to a six-year limitation period.[7] This is powerful support for not elevating our remarks in Phillips III to the level of a "holding." See Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries, 512 U.S. 267, 277 (1994) (declining to follow a previous opinion in part because the parties to the earlier case considered the dispositive issue "as an afterthought, devoting only one or two sentences to the question"); United States v. Bennett, 100 F.3d 1105, 1110 (3d Cir. 1996) (classifying as dictum a statement from a prior case in which "[n]either party had briefed or argued" the pertinent issue); United States v. Orozco-Rodriguez, 60 F.3d 705, 708 (10th Cir. 1995) (citing Rohrbaugh's definition of dicta and distinguishing two prior cases in which the critical issue was "conceded" by the government); Crawley, 837 F.2d at 292-93 (stating that a court may refuse to "giv[e] weight to a passage found in a previous opinion" when the relevant issue was neither "presented" nor "refined by the fires of adversary presentation"); cf. United States v. Daniels, 902 F.2d 1238, 1241 (7th Cir. 1990) ("Judicial assumptions concerning, judicial allusions to, and judicial discussions of issues that are not contested are not holdings.").
 
 
 19
 Second, our statements in Phillips III regarding the applicability of 2415(a) appear in a footnote and ignore critical portions of the statute. Surely it is not a coincidence that courts frequently categorize as dicta language that is relegated to footnotes. See, e.g., Greenwich Collieries, 512 U.S. at 277-78; Wainwright v. Witt, 469 U.S. 412, 422 (1985); UMLIC-Nine Corp. v. Lipan Springs Dev. Corp., 168 F.3d 1173, 1178 (10th Cir.), cert. denied, 120 S. Ct. 499 (1999); Bennett, 100 F.3d at 1109-10; Export Group v. Reef Indus., Inc., 54 F.3d 1466, 1471-73 (9th Cir. 1995); United States v. Ricks, 5 F.3d 48, 50 (3d Cir. 1993); Schwabenbauer v. Board of Educ. of the City Sch. Dist. of the City of Olean, 777 F.2d 837, 841-42 (2d Cir. 1985). Courts also classify as dicta inessential statements from previous opinions that were "perhaps not as fully considered." Crawley, 837 F.2d at 292; see also Greenwich Collieries, 512 U.S. at 277 (noting in a related context that a "cursory answer to an ancillary and largely unbriefed question does not warrant the same level of deference we typically give our precedents"); UMLIC-Nine, 168 F.3d at 1178 (refusing to follow dicta from an earlier case that was "unsupported by citation to relevant authority or statutory analysis"). In Phillips III, our statement that 2415(a) was the "controlling" statute of limitation was unaccompanied by any discussion of the terms "action" and "money damages." 4 F.3d at 860 n.1. Instead of considering the meaning of those terms, we simply acknowledged that oil and gas leases are "contracts" and moved on to the next issue. Id.[8]
 
 
 20
 In sum, our comments in footnote 1 of Phillips III cannot be regarded as binding precedent. Those comments (1) were unnecessary to reach the desired result in that case; (2) addressed an issue that was conceded by the government; (3) addressed an issue that was not briefed by the parties; (4) were relegated to a footnote; (5) failed to address key portions of the statute the panel was attempting to interpret; and (6) have never been cited as controlling authority by this or any other circuit court.
 
 B. MMS Orders to Pay and 28 U.S.C. 2415(a)
 
 21
 Because footnote 1 of Phillips III does not constitute a "holding," it is incumbent upon this court to determine whether 2415(a) forecloses the government's claims. We hold that 2415(a) is inapplicable in these circumstances because orders issued by the MMS seeking unpaid royalties do not constitute "actions." We reach this conclusion in part because "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." Badaracco v. Commissioner of Internal Revenue, 464 U.S. 386, 391 (1984) (citation omitted); accord United States v. Ward, 985 F.2d 500, 502 (10th Cir. 1993) (interpreting 2415(a)); Hess, 194 F.3d at 1175 (interpreting 2415(b)). Given our interpretation of the term "action," we need not consider the government's alternative arguments that MMS orders do not seek "money damages," are not "founded upon contract," and are encompassed by the FOGRMA's "otherwise provided by Congress" exception.
 
 
 22
 Administrative orders issued by the MMS do not constitute "actions" for three reasons. First, throughout 2415, Congress linked the term "action" to the filing of a complaint. See 28 U.S.C. 2415(a), (b), (d) (barring an action founded upon contract, founded upon tort, or to recover money erroneously paid "unless the complaint is filed" within a specified time period). A "complaint" is usually regarded as "[t]he original or initial pleading by which an action is commenced under codes or Rules of Civil Procedure." Black's Law Dictionary 285 (6th ed. 1990). "Pleadings," in turn, normally include "[t]he formal allegations by the parties to a lawsuit of their respective claims and defenses, with the intended purpose being to provide notice of what is to be expected at trial." Id. at 1152 (emphasis added); see also Phillips Petroleum Co. v. Johnson, No. 93-1377, 1994 WL 484506, at *1 (5th Cir. Sept. 7, 1994) (unpublished disposition cited by the parties) (concluding that an agency order "cannot be construed as a complaint" and that "[a]ctions that do not involve the filing of a complaint are not 'action[s] for money damages'").[9] Second, even if Congress had not used the term "complaint" throughout the statute, the phrase "action for money damages" typically refers to judicial proceedings. Black's Law Dictionary states that "action," in its "usual legal sense," means "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." Id. at 28 (emphasis added); see also id. at 389 (defining "damages" as "[a] pecuniary compensation or indemnity, which may be recovered in the courts") (emphasis added). Third, nothing in the legislative history indicates that Congress intended to ascribe a specialized meaning to the term "action" in 2415. The House Report speaks of "actions in the U.S. courts." H.R. Rep. No. 89-1534, at 2 (1966); see also id. at 3 (referring to "civil litigation" and "court congestion"). The Senate Report similarly provides that 2415 applies to "civil actions" and "actions in the U.S. courts." S. Rep. No. 89-1328, at 1, 8 (1966); see also id. at 8 (making reference to "claims in the courts"); id. at 2, 7 (using the term "suit" as a synonym for "action").
 
 
 23
 Shell and OXY argue that this interpretation of the term "action" will produce untenable results. They contend that the government can attempt to collect unpaid royalties either by initiating a judicial proceeding, see 30 U.S.C. 1722, or by issuing an administrative order. Shell and OXY maintain that under the government's interpretation of 2415(a), the former would be subject to a limitation period, but the latter would not. As a consequence, say Shell and OXY, the government could always avoid the statute of limitation by pursuing claims for unpaid royalties administratively. This argument has some force, and one circuit court has rejected the notion that "Congress intended agencies to be free to assert their claims at any time and by any means other than court actions, unencumbered by the period of limitation imposed by section 2415(a)." United States v. Hanover Ins. Co., 82 F.3d at 1052, 1055 (Fed. Cir. 1996) (citation omitted).
 
 
 24
 Nonetheless, this potentially troubling result cannot be corrected by judicial fiat. While "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available," Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982), it is equally true that "[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." Badaracco, 464 U.S. at 398. As discussed above, "[t]his is especially so when courts construe a statute of limitations, which 'must receive a strict construction in favor of the Government.'" Id. (citation omitted); see also E.I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924) (establishing that an action by the government "is subject to no time limitation, in the absence of congressional enactment clearly imposing it"). Congress may not have "precisely envision[ed]" that agencies such as the MMS might be able to issue administrative orders that resemble claims for breach of contract, but "[i]t is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not." Griffin, 458 U.S. at 576.
 
 
 25
 Shell and OXY also argue that 2415(i) shows the term "action" was intended to encompass agency proceedings. That section states that 2415(a) cannot prevent the government from collecting any claim "by means of administrative offset."[10] See S. Rep. No. 97-378, at 16 (1982) (explaining that 2415(i) "allows collection of delinquent debts owed the government by administrative offset beyond the six-year statute of limitations"); id. at 28 (indicating that the purpose of 2415(i) "is to extend the time period that agencies are allowed to offset benefits of debtors"). Shell and OXY assert that if 2415(a) is inapplicable to administrative actions, then the exemption created by 2415(i) is superfluous. Accordingly, Shell and OXY urge us to adopt the Federal Circuit's holdings in Hanover: "Administrative offset is not a judicial action. Thus, Congress has considered and dealt not only with judicial actions in section 2415, but with extra-judicial agency actions as well." 82 F.3d at 1055.
 
 
 26
 Section 2415(i) unquestionably lends support to the position advanced by Shell and OXY, but it cannot override the legal definitions of "action" and "complaint" as those terms are used in 2415(a). "Congress's enactment of section 2415(i) is best understood as a clarification of the limited scope of section 2415(a), to ensure that section 2415 would not be applied to administrative offsets." Id. at 1057 (Bryson, J., dissenting). As the dissenting judge in Hanover recognized:
 
 
 27
 The legislative history of the 1982 amendment that added section 2415(i) provides support for that interpretation. Before 1982, the Justice Department had concluded that, absent an amendment, section 2415 could be invoked to prevent the administrative offset of debts more than six years old. See S. Rep. No. 378, 97th Cong., 2d Sess. 16-17 (1982). The Comptroller General took the opposite position, arguing that section 2415 had no application to the administrative offset of debts. See Debt Collection Act of 1981: Hearings on S. 1249 before the S. Comm. on Governmental Affairs, 97th Cong., 1st Sess. 83 (1981). Noting the contrary position taken by the Justice Department, the Comptroller General recommended enacting subsection (i) "as a means of resolving the differences between us." Id. By adopting section 2415(i), Congress thus did not have to decide whether the Department of Justice or the Comptroller General had the better of the argument as to the proper construction of the pre-1982 version of section 2415.
 
 
 28
 In light of that background, the enactment of subsection (i) cannot be invoked to support the inference that Congress regarded section 2415(a) as extending to administrative actions. In any event, any such inference that could be drawn from the enactment of subsection (i) is not strong enough to overcome the clear language of section 2415(a). Particularly in light of the principle that statutes of limitations running against the sovereign are to be strictly construed, the apparent superfluity of section 2415(i) does not justify reading section 2415(a) to apply to cases that fall outside its explicit reach.
 
 
 29
 Id. (case citation omitted); see also Samedan Oil Corp. v. Deer, Civ. A. No. 94-2123 (RCL), 1995 WL 431307, at *8-*9 (D.D.C. June 14, 1995) (intimating that in enacting 2415(i) "Congress was merely acting out of an abundance of caution"), rev'd on other grounds, Independent Petroleum Ass'n of America v. Babbitt, 92 F.3d 1248 (D.C. Cir. 1996); Gerrard v. United States Office of Educ., 656 F. Supp. 570, 573 n.3 (N.D. Cal. 1987) (stating that although Congress adopted 2415(i) in response to a Justice Department determination that the six-year limitation period applied to administrative offsets, "[t]here is no indication in the legislative history that Congress agreed with the department's interpretation").
 
 
 30
 C. The Federal Oil and Gas Royalty Management Act
 
 
 31
 Since 2415(a) does not apply, it is also incumbent upon this court to decide whether the FOGRMA independently requires the government to collect unpaid royalties in a timely fashion. The statute directs the Secretary to "establish a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." 30 U.S.C. 1711(a) (emphasis added). Likewise, one of the goals of the statute is to "require the development of enforcement practices that ensure the prompt and proper collection and disbursement of oil and gas revenues owed to the United States and Indian lessors and those inuring to the benefit of States." 30 U.S.C. 1701(b)(3) (emphasis added).
 
 
 32
 At the outset, we reject the government's argument that the FOGRMA is irrelevant because OXY "failed to exhaust its administrative remedies concerning this issue." See Reply Brief for the Appellants in Case No. 98-5222 at 19. It is settled that a court may excuse the exhaustion requirement "if administrative remedies would be futile." Bryan v. Office of Personnel Management, 165 F.3d 1315, 1319 n.4 (10th Cir. 1999). The district court retained jurisdiction over the claims at issue in this appeal on precisely that basis, noting that "the MMS has consistently rejected statute of limitations challenges to orders to pay, finding them inapplicable to administrative proceedings." Supplemental Appendix of OXY USA Inc. at 17. There is no reason to believe that a limitations argument based on the FOGRMA would fare any better before the MMS than an argument based on 2415(a). Since the former would have been just as futile as the latter, OXY was not required to pursue it in administrative proceedings.[11]
 
 
 33
 OXY argues that the words "prompt" and "timely" indicate that the FOGRMA limits the time in which the government can collect royalties. But the language and structure of the statute undermine that assertion. For example, the word "timely" appears in a section of the statute titled "Duties of Secretary." See 30 U.S.C. 1711(a). If Congress had truly intended to limit the time in which the government can collect royalties, it would have referred to this section as a "statute of limitations." From our review of the FOGRMA when read as a whole, it is clear that Congress knew how to enact a statute of limitation when that was its intent. Section 1755 of title 30 expressly sets forth a six-year "Statute of limitations" for actions to recover certain penalties. Similarly, in the 1996 amendments to the FOGRMA Congress specifically enacted a seven-year "limitation period" complete with provisions governing accrual and tolling for any "judicial proceeding or demand which arises from, or relates to, an obligation." See 30 U.S.C. 1724(b).
 
 
 34
 OXY's reference to the word "prompt" is equally unavailing. The word "prompt" appears in a section of the statute titled "Congressional statement of findings and purposes." See 30 U.S.C. 1701(b)(3). Once again, if Congress had intended to enact an independent timeliness requirement, it would have called it a "statute of limitations" and would have avoided locating it in a "statement of findings and purposes." Moreover, 1701 merely lists the goals of the FOGRMA and sets forth a series of tasks that the Secretary "should" do. See 30 U.S.C. 1701(a). It follows that any obligations created by 1701 are precatory and aspirational, not mandatory.
 
 
 35
 Finally, the legislative history of the FOGRMA also undermines OXY's claim. The House Report contains no support for the proposition that Congress intended to limit the time in which the government can initiate administrative collection proceedings. Aside from a reference to 1755, the Report makes no mention of a statute of limitations of any kind. Indeed, if anything, the Report supports the government's arguments that (1) the phrase "in a timely manner" in 1711 refers to the "comprehensive inspection, collection and fiscal production accounting and auditing system" to be adopted by the Secretary (rather than to specific orders issued by the MMS); and (2) the words "timely" and "prompt" were inserted to "promote the revenue interests of the federal, state, and Indian beneficiaries of the federal leasing programs and not to provide a shelter for royalty payors such as OXY." See Reply Brief for the Appellants at 21. Among other things, the Report indicates that when Congress enacted the FOGRMA it was primarily concerned with (1) lost revenues resulting from poor royalty accounting practices by administrative agencies; (2) substandard auditing and verification procedures; (3) lax security on certain lease sites resulting in theft and fraud; and (4) an inadequate and inflexible array of enforcement tools. We conclude Congress' use of the word "timely" in 30 U.S.C. 1711(a) and the word "prompt" in 30 U.S.C. 1701(b)(3) was not intended to create a statute of limitation in which the government must act to collect royalties.
 
 III. CONCLUSION
 
 36
 We REVERSE the district court's grant of summary judgment against the government, and REMAND for entry of summary judgment in favor of the government.
 
 
 
 NOTES:
 
 
 *
 Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.
 
 
 [1]
 During the time period at issue, DOI regulations instructed the MMS to calculate the estimated reasonable value of production with "due consideration being given" to (1) "the highest price paid for a part or for a majority of production of like quality in the same field;" (2) the price received by the lessee; (3) posted prices; (4) regulated prices; and (5) "other relevant matters." 30 C.F.R. 221.47, 250.64 (1980).
 
 
 [2]
 Congress amended the FOGRMA in 1996. The amended version of the statute provides that "[a] judicial proceeding or demand which arises from, or relates to an obligation, shall be commenced within seven years from the date on which the obligation becomes due and if not so commenced shall be barred." 30 U.S.C. 1724(b)(1). The amended version of the statute also states that the limitations set forth in 28 U.S.C. 2415 and 2416 "shall not apply to any obligation to which this chapter applies." 30 U.S.C. 1724(b)(3). The notes to 1724 state that the amendments are effective "with respect to the production of oil and gas after the first day of the month following August 13, 1996."
 
 
 [3]
 The MMS adopted this method in an effort to follow the recommendations of an "Interagency Team." This Interagency Team (which included representatives from the Department of Energy, the Department of Commerce, the Department of Justice, the office of the Solicitor of the Department of the Interior, and the MMS) issued a report in May 1996 outlining various options for recalculating the value of oil produced from federal leases in California.
 
 
 [4]
 For the purpose of computing the limitations periods established in 2415, 2416(c) excludes the time during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."
 
 
 [5]
 As an initial matter, the government contends that we lack jurisdiction over Case No. 98-5252. The government notes that less than 10 days after the district court entered summary judgment in Shell's favor, Shell filed a motion to "clarify or correct" the judgment. The government asserts that this motion should be viewed as one to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e), and asserts that "[a] timely-filed Rule 59(e) motion has the effect of depriving a judgment of finality for the purposes of appeal." Appellants' Rule 27.2 Motion Suggesting Lack of Appellate Jurisdiction at 3.
 We reject the government's premise that Shell's motion was one to alter or amend the judgment under Rule 59(e). In its motion for summary judgment, Shell challenged the propriety of two orders issued by the MMS. When the district court granted that motion, it referred to the MMS's "orders to pay" in the plural but only listed one of those orders by name. In its post-judgment motion, Shell simply sought to clarify that the district court's ruling applied to both of the MMS's orders. While it may or may not have been proper for the district court to grant Shell's post-judgment motion (an issue we need not decide), none of the authorities cited in the government's brief demonstrate that the motion deprived this court of appellate jurisdiction. Cf. Fed. R. Civ. P. 60(a) (stating that clerical mistakes "may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court"). In any event, even if Shell's post-judgment motion did implicate Rule 59(e), Shell later withdrew the motion and filed a new notice of appeal.
 
 
 [6]
 Phillips III was preceded by Phillips Petroleum Co. v. Lujan, 951 F.2d 257 (10th Cir. 1991) ("Phillips I") and Phillips Petroleum Co. v. Lujan, 963 F.2d 1380 (10th Cir. 1992) ("Phillips II"). Although Phillips I and Phillips II both suggested that 2415(a) might apply to government orders seeking unpaid royalties, neither case held that the statute actually provides a legitimate defense. See Phillips I, 951 F.2d at 259-60 ("Defendants were not asserting a claim for underpayment of royalties. Had they been, plaintiff might have very well been able to assert a statute of limitations defense."); Phillips II, 963 F.2d at 1386 (stating that the Phillips I court "clearly held" that " 2415 may provide a legitimate defense to a claim for underpayment of royalties").
 
 
 [7]
 One month before oral argument in Phillips III, the government filed a copy of Phillips Petroleum Co. v. Kelly, No. 3-89-CV-1707-H (N.D. Tex. Mar. 26, 1993), a two-page decision adopting the view that 2415(a) does not apply to MMS orders. In its letter to the court submitting this supplemental authority, however, the government did not argue that 2415(a) was inapplicable. Furthermore, even if the government had advanced this argument for the first time in the letter, "[i]ssues not argued in the opening brief on appeal are deemed waived." Moncrief v. Williston Basin Interstate Pipeline Co., 174 F.3d 1150, 1155 n.2 (10th Cir. 1999).
 
 
 [8]
 A third factor also deserves mention. No federal circuit court has cited the Phillips III footnote for the proposition that 2415(a) governs claims for unpaid royalties. Given that Phillips III has now been on the books for seven years, that fact is telling. Cf. Export Group, 54 F.3d at 1472 (holding that statements in a footnote from an earlier decision were dicta in part because no case from that circuit had "cited the contested footnote as binding precedent").
 
 
 [9]
 Shell contends that Congress has acknowledged in other provisions of the United States Code that a "complaint" can trigger administrative proceedings, e.g., 5 U.S.C. 1215(a)(1)(C); 15 U.S.C. 45(b); 15 U.S.C. 522; 25 U.S.C. 2713; 29 U.S.C. 160(b), and that agencies sometimes describe the document used to initiate certain proceedings as a "complaint." E.g., 12 C.F.R. 19.197; 14 C.F.R. 13.208; 15 C.F.R. 280.605; 16 C.F.R. 1025.11. But the existence of a handful of statutes and regulations that employ an expansive definition of the term "complaint" does not demonstrate that Congress intended to eschew the traditional definition of "action" when it enacted 2415. See generally Bowen v. Massachusetts, 487 U.S. 879, 896 (1988) (noting "the well-settled presumption that Congress understands the state of existing law when it legislates"). Shell's argument also ignores the maxim that statutes of limitation potentially applicable to the government must be strictly construed. See, e.g., Badaracco, 464 U.S. at 391.
 
 
 [10]
 In the same vein, 2415(h) provides that "[n]othing in this Act shall apply to actions brought under the Internal Revenue Code or incidental to the collection of taxes imposed by the United States."
 
 
 [11]
 Noting that the claims over which the district court retained jurisdiction were based on 2415(a), the government also maintains that OXY's failure to cross-appeal the dismissal of its other claims precludes the company from relying on the FOGRMA. However, "[a]n appellee may defend the judgment won below on any ground supported by the record without filing a cross appeal." In re Robinson, 921 F.2d 252 (10th Cir. 1990). This is not a case in which OXY "effectively seek[s] to reverse a ruling lost below in the guise of an alternate-ground affirmance," see Hutchinson v. Pfeil, 208 F.3d 1180, 1186 (10th Cir. 2000), because the district court expressly declined to consider the potential effect of 1711(a).
 
 
 
 37
 BROWN, Senior District Judge, Dissenting.
 
 
 38
 I respectfully dissent. I believe we are bound by this court's determination in Phillips III that 2415(a) is the governing statute of limitations on claims like those at issue here.
 
 
 39
 Phillips III was identical in all material respects to the case now before us. It involved an administrative order by the Department of Interior directing a lessee to pay additional royalties. The lessee sued to enjoin the Department from enforcing the order and the district court granted summary judgment to the lessee, finding that the six-year statute of limitations in 2415(a) barred the government from collecting the royalties. On appeal, the parties agreed that 2415(a) was controlling, but the government maintained that its claim was timely because the claim did not accrue until an audit of the lessee was completed and because the statute of limitations was tolled during the audit. In deciding that appeal, a panel of this court declared that "we ... agree with the parties that 28 U.S.C. 2415(a) is the controlling statute of limitations...." Phillips III, 4 F.3d 858, 860 n.1 (10th Cir. 1993). The panel went on to reject the government's argument about accrual, but held that the statute of limitations was tolled until the Department knew or should have known of the lessee's breach. The panel remanded the case for an evidentiary hearing concerning when the Department knew or should have known of the breach. Id. at 864.
 
 
 40
 Faced with this "bay horse case," the majority cites a multitude of factors in an attempt to show that the panel's finding in Phillips III that 2415(a) governed the claim was "neither 'necessary' nor 'essential' to the determination of that case." The majority's analysis, however, cannot be reconciled with a plain reading of Phillips III. The panel in that case did not hypothetically assume that 2415(a) might apply; it stated flatly that "we ... agree with the parties that 28 U.S.C. 2415(a) is the controlling statute of limitations...." It then applied the statute to the claims before it. Not only was the panel's finding necessary to its determination, it was in fact the cornerstone of the decision. One can argue that the panel was wrong, or that it did not fully analyze the issue, or that other courts have not agreed with its finding, but I do not see how it can be argued that the panel's finding was unnecessary to its judgment.[1] Absent that finding, there would have been no reason for the panel to rule on the accrual and tolling issues, and the case certainly would not have been remanded for an evidentiary hearing. The majority contends that the panel's finding could be deleted from the opinion "without seriously impairing the analytical foundations of the holding." But the applicability of the statute of limitations was the underlying premise of the panel's ruling.[2] Absent that premise, the entire appeal (as well as the proceedings conducted on remand) would be nothing more than advisory and hypothetical exercises. I do not think we can relegate to the status of dicta a finding that formed the basis of the court's opinion. Perhaps the panel's finding was erroneous, perhaps not -- but in any event it was a straightforward legal ruling and we are bound to apply it unless it is changed by the en banc court.[3] See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (we are bound by the precedent of prior panels in the absence of en banc consideration or an intervening decision by the Supreme Court).
 
 
 41
 Aside from the question of whether Phillips III is binding, I also dissent from the majority's holding that 2415(a) does not apply because MMS' orders to pay royalties are not "actions" within the meaning of the statute. Section 2415 is entitled "Time for commencing actions brought by the United States." Subsection (a) contains a time limit applicable to "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract...." The clear object of the statute was to provide for a general statute of limitations on contract claims asserted by the government, including claims by government agencies. As the majority concedes, an exception in 2415(i) for administrative setoffs supports the view that 2415(a) was intended to apply to administrative proceedings as well as judicial proceedings. Despite this, the majority relies upon the dictionary definition of "action" and a presumption of construction in favor of the government to conclude that the statute only applies to lawsuits in court and not to administrative actions. I believe such a construction is at odds with the plain language and structure of the statute. In my view, 2415(a)'s limitation on "every action" by the government includes an action by MMS claiming that it was owed additional royalties under a mineral lease, regardless of whether MMS is attempting to recover on that claim through the filing of a lawsuit or through the issuance and enforcement of an administrative order.[4]
 
 
 42
 This case presents an example of how excluding administrative collection proceedings from the definition of "action" leads to irrational results and permits government agencies to evade the statute of limitations through procedural gimmickry. Pursuant to 2415(a), MMS was presumably barred from filing suit to collect unpaid royalties going back more than six years. Knowing this, MMS simply issued administrative "orders to pay" to the appellees. At the date of their issuance, the orders demanded payment of royalties and accumulated interest going back some fifteen years or more. In OXY's case, a 1996 order directed OXY to pay an additional $551,693.26 in royalties for alleged underpayments between 1980 and 1983, together with accumulated interest thereon of approximately $1.7 million. Shell fared less well, being ordered to pay $28 million in additional royalties and $70 million in interest dating back to 1980. These orders were apparently based on a 1996 decision by MMS to change its prior practice and to use higher cost Alaskan crude oil as the base value for determining royalty payments. MMS would have us believe it is free to issue such orders without regard to how far back in time they go, and that the unlucky recipients are bound to pay regardless of the fact that the orders come down like lightning bolts from Mount Olympus, because such orders do not constitute "actions" by the government. I think such a construction is unreasonable and is contrary to Congress' intent in adopting the statute of limitations. See United States v. Hanover Ins. Co., 82 F.3d 1052, 1055 (Fed. Cir. 1996); See also Phillips III, 4 F.3d at 863 ("The legislative history in support of 2415(a) indicates Congress was motivated in part by notions of fairness and equity in government dealings with private litigants, and further motivated to reduce the costs of record keeping and encourage prompt agency actions on claims.").
 
 
 43
 In view of the majority's holding, I will not dwell on the other arguments raised by the appellants. I will simply say I find these other arguments unpersuasive. I believe that MMS' claims for royalties going back to 1980 constitute an action for money damages, founded upon a contract, that is now barred by 2415(a). I would also reject appellants' argument that Congress has "otherwise provided" an applicable statute of limitation in FOGRMA inasmuch as that provision applies only to oil production after September 1, 1996. Under the circumstances, I believe the appellees are entitled to declaratory and injunctive relief prohibiting MMS from enforcing its claims. Accordingly, I would affirm the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 As the district court in this case noted, "[i]t is, as a matter of logic, essential to the [Phillips III] holding concerning accrual of a claim ... that 2415(a) applies in the first place."
 
 
 [2]
 I do not understand the assertion that the panel's finding was unnecessary to the decision because "we could have assumed arguendo that 2415(a) applied and still found in the government's favor based on the tolling provision...." Maj. Op. at 1185. The issue is not what we could have done but what we did. In this regard, I would point out that it was only because the Phillips III panel concluded that the statute of limitations applied that it remanded the case for further proceedings rather than reversing the district court and directing it to enter judgment for the government.
 The majority also finds that Amerada Hess Corp. v. Department of Interior, 170 F.3d 1032 (10th Cir. 1999), implicitly shows that Phillips III's finding was not binding. I disagree. The Amerada Hess panel declined to address the applicability of the statute of limitations, finding instead that the government's claim was timely even assuming 2415(a) applied. This assumption, which is consistent with Phillips III, in no way shows that Amerada Hess considered Phillips III to be non-binding. In fact, Phillips III was not mentioned in the decision and there is no indication that the Amerada Hess panel was aware of it. Additionally, Amerada Hess serves to highlight the distinction between an assumption of law that makes no difference to the disposition of a case and a finding of law that does make a difference. Phillips III is an example of the latter, inasmuch as the court's finding required it to remand the case to the district court for further proceedings.
 
 
 [3]
 As a cautionary note, I might add that an overly expansive view of "dicta" could inject confusion into seemingly settled principles of law. District judges, who must decide in the first instance what law governs a claim, are entitled (and required) to consider as precedent clear conclusions of law stated in circuit court opinions. Parties to controversies likewise rely upon such statements in assessing their rights and liabilities and in litigating and settling claims.
 
 
 [4]
 It seems clear that at some point the agency would have to resort to a court for enforcement of its order or that the validity of the order would be subject to review in a court proceeding. As such, the majority's emphasis that the terms "action" and "complaint" in 2415(a) refer only to judicial proceedings is, in my view, misplaced. See Marathon Oil Co. v. Babbitt, 838 F.Supp. 575, 579 (D. Alaska 1996) ("debate over whether the statute does or does not apply to the administrative proceeding itself seems beside the mark since the government must come to court to enforce any such order"). Section 2415(a) contemplates that agency decisions will be followed by court proceedings. It thus provides that when final agency decisions are made in administrative proceedings required by contract or by law, the government's claim will be barred unless a complaint is filed within one year of the decision. MMS does not argue that its claim is timely by virtue of this provision.